**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| GENERAC POWER SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| KOHLER CO., CORE CONSULTING, LLC | ) | |
| and GREG SCHMIDT, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Generac Power Systems, Inc., by and through its attorneys, for its complaint against corporate Defendants Kohler Co. ("Kohler") and Core Consulting, LLC ("Core"), and individual Defendant Greg Schmidt (the "Individual Defendant"), hereby alleges as follows:

### SUMMARY AND NATURE OF THE ACTION

1.      This action arises as a result of Kohler's infringement of an important Generac patent and as a result of the wrongful activity of Kohler, Core and the Individual Defendant, which gives rise to several federal and state law claims for relief. Generac specifically asserts the following claims: (1) infringement of Generac's U.S. Patent No. 6,653,821 by Kohler; (2) unfair competition by Kohler and Core; (3) breach of contract by the Individual Defendant; (4) tortious interference with contractual relations by Kohler and Core; and (5) unjust enrichment of Kohler and Core.

## THE PARTIES

2.     Plaintiff, Generac, is a corporation organized and existing under the laws of the State of Wisconsin, having its principal place of business at Highway 59 and Hillside Road, Waukesha, Wisconsin 54187.  Generac was the first company to engineer affordable home standby generators and is the leader in the home generator business.  Generac continues to be a technology leader in both the home and industrial generator businesses.

3.     Kohler is a corporation organized under the laws of Wisconsin, having its principal place of business at 444 Highland Drive, Kohler, Wisconsin 53044.  Kohler also sells home generators and is a competitor of Generac.

4.     Core is a corporation organized under the laws of Wisconsin, having its principle place of business as 163 Green Bay Road, Thiensville WI 53092.  On information and belief, Core is an engineering consulting firm that has partnered with Kohler.

5.     Greg Schmidt ("Schmidt"), an individual, is a resident of the State of Wisconsin and this judicial district at 235 Martin Drive, Port Washington, Wisconsin 53074.  Schmidt was employed at Generac as a trusted and key employee and was provided access and exposure to Generac's confidential, proprietary and trade secret information.  As consideration for his employment at Generac, Schmidt agreed that he would not render services for any person or entity in a line of business competitive with Generac for at least one year following the termination of his employment with Generac, nor disclose any Generac confidential, proprietary or trade secret information.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

6.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code (First Claim).  Subject matter jurisdiction in this Court is conferred pursuant to 28 U.S.C. § 1338(a).

7.      Further, this is an action for unfair competition (Second Claim), breach of contract (Third Claim), tortious interference with contractual relations (Fourth Claim) and unjust enrichment (Fifth Claim).  Subject matter jurisdiction in this Court for the second through fifth claims is conferred pursuant to 28 U.S.C. §§ 1367(a) and/or 1338(b).

### Personal Jurisdiction and Venue

8.      Each of the Defendants is subject to personal jurisdiction within this judicial district, being present and doing business in this judicial district and directing improper activities into this judicial district.  On information and belief, Kohler has its regular and established principal place of business within this judicial district at 444 Highland Drive, Kohler, Wisconsin, is qualified to do business in Wisconsin pursuant to the laws of the State of Wisconsin, and has been doing such business and is doing such business in Wisconsin and in this district.  On information and belief, Core has its regular and established principal place of business within this judicial district at 163 Green Bay Road, Thiensville, Wisconsin, is qualified to do business in Wisconsin pursuant to the laws of the State of Wisconsin, and has been doing such business and is doing such business in Wisconsin and in this district.   On information and belief, Schmidt resides and works within this judicial district.

## FACTS COMMON TO ALL CLAIMS

### The Nature and Scope of the Defendants' Acts

9.     The claims set forth in this Complaint stem from multiple wrongful acts by Kohler, Core and Schmidt in violation of one or more federal and state statutes or common law. Kohler, acting alone and with the defendants and others, has engaged in a widespread and concerted plan to obtain quickly and at low cost certain confidential, proprietary and trade secret information that Generac painstakingly developed over a period of several years and at substantial cost. Kohler's improper acts, upon information and belief, include the infringement of Generac's U. S. patents, unfair competition, tortious interference with contractual relations, and unjust enrichment. Generac is informed and believes that certain of the wrongful actions alleged below have been undertaken by, or with the knowledge and approval of, high level employees and officers of Kohler.

10.     Among other things, on information and belief, Kohler targeted and hired multiple former Generac employees to insure that Kohler would receive the benefit of Generac's superior designs, know-how, technology, marketing plans and other market information without proper compensation to Generac and without Generac's authorization. At the time when these various individuals were recruited and hired, Kohler knew or had reason to know that such individuals possessed highly specialized knowledge regarding Generac's technologies, methods and manner of conducting business, including many innovative techniques and materials used in the manufacture of power generators. Through this scheme, Kohler improperly and unlawfully copied successful Generac technologies and know-how rather than developing its own.

### Generac's Development Of Confidential, Proprietary And Trade Secret Information

11.     At all times relevant to this complaint, Generac has been, and continues to be, a leader in the research, design, manufacture and sale of residential and industrial generators and

-4-

associated products and controls.  To maintain its position as a market leader, Generac maintains

design facilities in Eagle, Waukesha, and Whitewater, Wisconsin (the "Research Centers").

12.    Generac has invested, and continues to invest, millions of dollars in the

development of confidential systems and processes to manufacture generators and related

controls and software.  As a result of such investment, Generac has developed valuable and

highly competitive technology and know-how, which constitutes confidential, proprietary and

trade secret information to Generac including, among other things, information directed to

development strategies, product designs and configurations, processing and analytical

techniques, manufacturing processes, tools and equipment used in manufacturing processes,

product performance tests, and other confidential information, and business and intellectual

property strategies and information related to strategic, financial and marketing activities,

including strategic plans, pricing information and customer lists and/or preferences.

**Generac's Protection Of Its Confidential, Proprietary And Trade Secret Information**

13.    Generac has adopted and enforces a wide range of procedures to protect its

confidential, proprietary and trade secret information from disclosure.  Among other measures, it

advises its employees of the confidential and sensitive nature of such information and carefully

limits the use and disclosure thereof.

14.    All Generac employees who are in a position of trust to access Generac

confidential, proprietary and trade secret information must sign a confidentiality and non-

competition agreement as a condition of their employment with Generac.  New employees who

are likely to be in a position of trust as key employees to have access to confidential, proprietary

or trade secret information are informed of the need to maintain the secrecy of Generac's

confidential, proprietary and trade secret information and are required to execute agreements to maintain confidentiality of proprietary information.

15.    Whenever an employment relationship is terminated, it is Generac's general practice to remind the individual of his continuing contractual and fiduciary obligations, either through an exit interview or other appropriate means.

16.    Access to Generac's facilities, including Generac's corporate offices, and particularly its research and manufacturing facilities, is restricted to authorized personnel. Employees are required to present identification badges to gain access to Generac's facilities. Visitors are required to sign a log before gaining access to Generac's facilities, must wear a visitor pass while on Generac's premises, and are escorted by a Generac employee while on Generac's premises.

17.    Access to Generac's research and technical computer databases and files that contain confidential, proprietary and trade secret information is provided only to authorized personnel.  Such computer access is password protected.

**Kohler's Targeted Employment Of Former Generac Employees
And Other Unfair Business Practices**

18.     Kohler's improper means of competition include inducing Generac employees to leave Generac and to work for Kohler regardless of such employees' legal and ethical obligations to Generac.  Kohler has employed or currently employs former employees of Generac.  Most, if not all, of these employees when employed by Kohler had and presently possess specialized knowledge and information regarding Generac's confidential, proprietary and trade secret technology and business activities.

19.    Generac is informed and believes that Kohler has engaged in a pattern of targeting and hiring former employees of Generac, knowingly recruiting Generac employees possessing or

having access to Generac confidential, proprietary and trade secret information. Upon further information and belief, Kohler attempted to induce current employees of Generac to work at or for Kohler in order to gain improper access to Generac's confidential, proprietary and trade secret information and technology.

20. On information and belief, Kohler directly or indirectly encouraged former Generac employees to violate their agreements with Generac, including by way of example, to disregard their covenants not to compete and deal fairly with Generac, and their obligations not to disclose Generac confidential, proprietary and trade secret information.

21. Through such improper activities and targeting of Generac employees, Kohler has followed a path of indiscriminately misappropriating information from Generac and attempting to clone Generac's products and market presence. Such cloning has included Generac's product configurations and designs, patented technology, marketing strategies and other confidential, proprietary and trade secret information. On information and belief, having known of Generac's intellectual property rights, Kohler has willfully violated and infringed upon such rights regardless of whether they were protected by federal or state law.

22. In 2003, Kohler pursued John Schultz ("Schultz"), at the time a Generac employee, to work as the Director of Sales in the residential generator division. Schultz held the position of Vice President of Sales for residential generator products while at Generac. When offered employment, Schultz had and still possesses specialized knowledge and information regarding Generac's propriety knowledge and business activities. On August 14, 2003, Generac filed a Summons and Complaint against Schultz in Waukesha County Circuit Court based on Schultz's willful disregard of the non-compete agreement he signed with Generac. The court issued a restraining order against Schultz based on the irreparable harm that would be caused to

Generac by Schultz' disclosure of confidential information to Kohler. The matter was later settled. As a result of this lawsuit involving Schultz, Kohler was acutely aware that Generac had and would enforce non-competition agreements with its employees.

23.    Notwithstanding such knowledge, Kohler pursued Ronald Donahue ("Donahue"), a current Generac employee, to work in its generator division in July 2010. When offered employment, Donahue had and still possesses specialized knowledge and information regarding Generac's proprietary technology and business activities. Kohler knew that Generac had an employment agreement with Donahue that prohibited him from competing with Generac for a one-year period following termination of employment. Despite such knowledge, Kohler offered Donahue a position as an engine emissions manager. Donahue's agreement with Generac further would have barred Kohler's schemes to employ Donahue in such a competitive position and to obtain access to and implement Generac proprietary, confidential and trade secret information.

24.    Kohler indicated to Donahue that he need not be concerned with his non-compete covenant and that he could proceed in willful disregard of such provisions. Among other things, on information and belief, Kohler promised that it would provide legal services on behalf of Donahue to defend against any action taken by Generac to enforce its agreement with Donahue. Donahue declined Kohler's improper invitation and remains at Generac, but Kohler's deliberate effort to subvert his contractual relationship with Generac, on information and belief, was not an isolated or spontaneous activity.

25.    Another example of Kohler's efforts to subvert Generac's lawful agreements with its employees involves Daniel Giampetroni ("Giampetroni"). Giampetroni was employed with Generac until about August of 2008, in various capacities, including as Senior Marketing Manager.

26.     As Senior Marketing Manager at Generac's Waukesha facility, Giampetroni was exposed to certain Generac information that was, and he understood to be, confidential, proprietary and trade secret information relating to customers, pricing, targeted market and technical information.  As a condition of his employment at Generac, and in consideration of his employment at Generac, Giampetroni signed an agreement on or about May of 2003, in which he agreed, among other things, to maintain the confidentiality of Generac's confidential, proprietary and trade secret information, and not to compete with Generac for a given period of time.

27.     On information and belief, Giampetroni began employment with Kohler in or around 2008 in a position in which Kohler expected him to compete with Generac and employ, inherently or otherwise, Generac confidential, proprietary and trade secret information.  Generac is further informed and believes that Kohler targeted and recruited Giampetroni for his specialized knowledge of Generac confidential, proprietary and trade secret information irrespective of his contractual and other obligations to Generac

28.     Generac is informed and believes that Shultz and Giampetroni, and possibly other former Generac employees, committed the foregoing wrongful acts intentionally and maliciously and with the full knowledge, support, assistance and urging of Kohler.

**Improper Conduct by Defendants Relating To Individual Defendant Schmidt**

29.     Defendant Schmidt was employed with Generac until about July 16, 2010, in various capacities, including as associate engineer.  He was a key and trusted employee of Generac who, as a result of his trusted position, was given access to valuable confidential, proprietary and trade secret information that could substantially harm and damage Generac if not properly protected.

30.    As a condition of his employment at Generac, and in consideration of his employment at Generac, Schmidt signed an agreement on or about October 26, 2009, in which Schmidt agreed, among other things, to maintain the confidentiality of Generac's confidential, proprietary and trade secret information and not to compete with Generac for a limited period of time.  Specifically, Schmidt agreed not to disclose Generac confidential information to anyone.

31.    In his capacity as an engineer at the Waukesha facility, Schmidt was exposed to certain Generac information that was, and he understood to be, confidential, proprietary and trade secret information relating to engine product designs and configurations, processing and analytical techniques, manufacturing processes, tools and equipment used in manufacturing processes, product performance tests and other propriety information.

32.    On Schmidt's last day of employment with Generac, July 16, 2010, he executed a document entitled "Non-Compete Agreement – Continuing Obligations Acknowledgement." This document indicated that Schmidt had "accepted employment with Kohler."  It further reminded Schmidt of his on-going obligation to "not render services for any person or entity in a line of business competitive with Generac for one year after the termination of [his] employment relationship with Generac."  Finally, this document put Schmidt on notice of his obligation to "notify any prospective employer of the existence and nature of the Noncompete Agreement."

33.    On information and belief, Core hired Schmidt after he resigned from Generac. This occurred despite Schmidt's representations to Generac that Kohler would be his next employer.  Core employed Schmidt to provide services to Kohler in competition with Generac for approximately one year, which is the period of time that Schmidt had covenanted not to compete with or offer services against Generac.  Upon expiration of this one year period, Kohler directly hired Schmidt as its employee.  Upon information and belief, Schmidt's work at Kohler,

which was in competition with Generac, never changed, only the false appearances of change from Core to Kohler occurred.

34.     On information and belief, Schmidt's employment with Core was a subterfuge. Based on Kohler's pattern of wrongful conduct in recruiting other Generac employees, including Schulz and Donahue, Generac is informed and believes that Kohler conspired with Core and Schmidt such that Core would hire Schmidt in an effort to circumvent Schmidt's non-competition agreement with Generac.  On further information and belief, by indirectly hiring Schmidt for Kohler through Core, Kohler and Core knew that Schmidt should not compete against Generac and should not disclose Generac's confidential, proprietary and trade secret information. On information and belief, these defendants attempted to insulate Kohler and Schmidt from charges of improper conduct by indirectly hiring Schmidt through Core.

35.     Generac is informed and believes that Schmidt and Core committed the foregoing wrongful acts intentionally, maliciously, grossly and wantonly, and with the full knowledge, support, assistance and urging of Kohler.

36.     On information and belief, Kohler induced, procured, conspired with and solicited Schmidt to disclose Generac's confidential, proprietary and trade secret information.

### Unjust Enrichment Of Kohler and Core

37.     Kohler has at times relevant to this complaint experienced difficulty in maintaining competitiveness in the North American generator market due to its failure to develop generator and control system technology.

38.     Generac is informed and believes that Kohler devised a plan, alone and in concert with Core, with the goal of obtaining the benefits of Generac's investments in the research and design of industrial and residential generators and associated controls ("Kohler's plan").

Case 2:11-cv-00935-JPS   Filed 10/05/11   Page 11 of 21   Document 1

39.     Upon information and belief, Kohler's plan included selective targeting, recruitment, and hiring of several individuals previously employed by Generac.  On information and belief, Kohler targeted Generac employees and former employees in an effort to reach or maintain competitiveness in the generator and related controls market without having to make the same investments in the research and development of manufacturing processes as would otherwise be required by a competitor acting lawfully and in good faith.

40.     As a business necessity, Generac exposes its key employees, including several former Generac employees now employed by Kohler, to Generac's technology, know-how, and market plans.  On information and belief, Kohler knowingly, deliberately, intentionally and without just cause, induced, , procured, conspired with and solicited Generac's former employees to disclose information that Generac painstakingly developed over numerous years and at substantial cost, as well as other property and information, and to disregard their obligation to refrain from competing with Generac for a limited period of time.

41.     Kohler's conduct is not limited to isolated instances.  On information and belief, Kohler engaged in a widespread, purposeful effort to secure Generac property and information concerning various processes and components.  The pattern of recruitment and disregard of Generac's legitimate rights by Kohler was so designed as to unjustly enrich Kohler at Generac's expense.

42.     On information and belief, the use of Generac's property and information and the employment of former key Generac employees during a contractual non-compete period has decreased Kohler's expenditures for research and development, has provided cost savings and valuable improvements to the manufacturing processes and business operations of Kohler, and

has provided valuable information about its direct competitor, Generac, thereby improving Kohler's competitiveness in the marketplace.

43.     On information and belief, Kohler and Core have benefited from the value of Generac confidential, proprietary and trade secret information, other property information and know-how, and the contribution of former key Generac employees during their contractual non-compete period in its manufacturing process and business operations, to the detriment of Generac.

## Defendants Have Caused Irreparable Harm To Generac

44.     Defendants have engaged and are continuing to engage in unlawful acts in violation of contracts and other applicable and statutory law.

45.     During his employment at Generac, Schmidt became aware of, and had access to, Generac's confidential, proprietary and trade secret information, including designs, know-how, and other technology at a very detailed level.

46.     Generac has suffered loss of future profits and competitive advantage including market share, commercial channels, and the like, as a result of Defendants' extreme conduct.

47.     Generac lacks an adequate remedy at law for Defendants' illegal conduct because monetary damages alone will not provide Generac with adequate relief from the injuries it continues to sustain.

## FIRST CLAIM

### Patent Infringement of U.S. Patent No. 6,653,821

48.     Generac incorporates by reference the allegations contained in paragraphs 1-47 above.

49.     On November 25, 2003, United States Letters Patent No. 6,653,821 B2, entitled "System Controller and Method for Monitoring and Controlling a Plurality of Generator Sets" ("the '821 patent"), was duly and legally issued to Generac.  Since that date, Generac has been and still is the owner of the '821 patent and of all right of recovery for damages thereunder.  A copy of the '821 patent is attached hereto as Exhibit A.

50.     Kohler has willfully infringed the '821 patent by making, using, selling, and offering to sell in this judicial district and throughout the United States certain control and generation systems, including at least its Master Control Panel 3000 ("MCP 3000") and the Decision-Maker Paralleling System ("DPS").

51.     Kohler's manufacture, use, sale and/or offer for sale of the MCP 3000 and the DPS in the United States has been without license from Generac and constitutes infringement by Kohler of the '821 patent claims, including one or more of claims 1-24, in violation of 35 U.S.C. § 271.

52.     As a result of Kohler's infringement of the '821 patent, Generac has been damaged in an amount to be determined at trial.  Generac will suffer immediate and irreparable injury unless this Court enjoins infringing activities of Kohler.

## SECOND CLAIM

### Unfair Competition by Kohler and Core

53.     Generac incorporates by reference the allegations contained in paragraphs 1-52 above.

54.     Generac and Kohler directly compete against each other in the residential and industrial markets for electrical generators and associated control systems.

55.     Generac has invested its labor, skill, name and reputation in connection with the research, development, manufacture and sales of its residential and industrial generators and associated control systems.

56.     Kohler and Core appropriated the fruits of Generac's investments by engaging in a wrongful disregard of legitimate rights of Generac.  Kohler, alone and in conjunction with Core,  recruited and hired key Generac employees in knowing violation of the employee's contractual obligations and misappropriated strategic Generac intellectual property, designs, technology and marketing plans.

57.     On information and belief, Kohler and Core have each acted, and continue to act, in bad faith, grossly and wantonly, to the benefit of Kohler and to the detriment of Generac. Such wrongful conduct was, on information and belief, intentional and without just cause.

58.     Kohler has engaged and will continue to engage in unfair competition unless enjoined by this Court.

59.     On information and belief, Kohler's and Core's wrongful conduct, separately or jointly, was willful and malicious, and an award of exemplary damages and attorney fees is appropriate.

60.     As a result of Kohler's and Core's wrongful conduct, separately or jointly, Generac has been damaged and will continue to be damaged in an amount to be determined at trial.  Generac has suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of Kohler.

## THIRD CLAIM

### Breach of Contract by Schmidt

61.     Generac incorporates by reference the allegations contained in paragraphs 1-60.

62.     Schmidt has a valid and enforceable contract with Generac, which, in exchange for good and valuable consideration, included an obligation not to provide services against Generac for one year after termination of his employment relationship with Generac, and further, to not disclose confidential, proprietary and/or trade secret information that belongs to Generac.

63.     On information and belief, Schmidt has breached a valid and enforceable contract with Generac by rendering services for Kohler prior to July 16, 2011 and by misappropriating confidential, proprietary and trade secret information for the benefit of Kohler.

64.     As a result of the breach of contract, Generac has been damaged and will continue to be damaged in an amount to be determined at trial.  Generac has suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of the Individual Defendant.

## FOURTH CLAIM

### Tortious Interference With Contractual Relations by Kohler and Core

65.     Generac incorporates by reference the allegations contained in paragraphs 1-64.

66.     Kohler and Core knew or had reason to know that Generac had entered into valid and binding contracts with Schmidt, which included among other things, obligations to not

disclose confidential, proprietary and trade secret information belonging to Generac and not to render services to Kohler in a line of business competitive with Generac for one year after termination of his employment at Generac.

67.     Kohler engaged in tortious interference with contract in violation of the laws of Wisconsin by inducing, procuring and soliciting breaches of contract between Generac and Schmidt.

68.     On information and belief, Kohler's wrongful conduct, separately or jointly, was willfully, maliciously, grossly and wantonly undertaken, and an award of exemplary damages and attorney fees is appropriate.

69.     As a result of Kohler's wrongful conduct, separately or jointly, Generac has been damaged and will continue to be damaged in an amount to be determined at trial. Generac has suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of Kohler.

## FIFTH CLAIM

### Unjust Enrichment of Kohler and Core

70.     Generac incorporates by reference the allegations contained in paragraphs 1-69.

71.     On information and belief, Kohler and Core have been unjustly enriched by a sustained and widespread plan and practice to raid Generac employees, information and know-how.

72.     As a result of Kohler's and Core's wrongful conduct, Generac has been damaged and will continue to be damaged in an amount to be determined at trial. Generac has suffered and will continue to suffer immediate and irreparable injury unless this Court enjoins the wrongful activities of Kohler and Core. Further, it is inequitable for Kohler and Core to retain

the benefit of its wrongful actions, to the detriment of Generac, and Kohler and Core should be deemed a constructive trustee of said benefits retained.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Generac prays for the following relief:

A.     Judgment for Generac on its claims for patent infringement.

B.     Permanently enjoining Kohler, its respective officers, directors, agents, and employees and all those in active concert or participation with it who receive notice of the judgment by personal service or otherwise, from making, importing, using, selling, and offering to sell control or generator systems covered by the claims of the '821 patent and from otherwise infringing, contributing to infringement of, and actively inducing infringement of any of at these claims of Generac's patent.

C.     An award of compensatory and punitive damages to Generac by reason of the wrongs committed by Kohler, including an award of increased damages pursuant to 35 U.S.C. § 284, for Kohler's willful and deliberate patent infringement.

D.     An assessment of interest, including prejudgment interest, on the damages so awarded.

E.     An award to Generac of its costs and reasonable attorney fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

F.    Judgment for Generac and against Kohler and Core on Generac's claims for unfair competition, tortious interference with contractual relations and unjust enrichment.

G.    Judgment for Generac and against Individual Defendant Schmidt, on Generac's claims for breach of contract.

H.    An order requiring the return of all information belonging to Generac and the right to inspect and monitor compliance with each injunction entered by the Court.

I.    Preliminarily and permanently enjoining Defendants, their respective officers, directors, agents, and employees and all those in active concert or participation with them who receive notice of the judgment by personal service or otherwise:

      (i)    from using or disclosing Generac's confidential, proprietary and trade secret information;

      (ii)   from seeking Generac's confidential, proprietary and/or trade secret information from Generac's former, current and/or future employees;

      (iii)  requiring the destruction of all documents, notebooks, data, electronic records, product, machinery, and any other material that embodies, was produced by, or otherwise results from or contains Generac's confidential, proprietary and/or trade secret information or requiring the return of such materials to Generac;

        (iv)     prohibiting defendants from filing any patent application embodying, resulting from or otherwise disclosing Generac confidential, proprietary, and/or trade secret information; and

        (v)     from taking certain further action, or refraining from taking certain further action, that would be reasonable and necessary in light of the evidence to be adduced.

J.     An accounting and constructive trust to Generac by reason of the wrongs committed by Kohler, Core and Schmidt requiring the assignment and transfer of all intellectual property, including issued patents and applications for patent both in the U.S. and abroad, that embodies, was produced by, or otherwise resulted from or contains Generac confidential, proprietary and trade secret information to Generac, as well as disgorging all profits made by Kohler by way of their wrongful conduct.

K.     An award of compensatory damages to Generac by reason of the wrongs committed by Kohler, Core and Schmidt as well as an award of punitive damages for defendants' willful, wanton, intentional, and malicious conduct.

L.     An assessment of interest, including prejudgment interest, on the damages so awarded.

M.     An award of costs of this action together with Generac's attorney's fees pursuant to any applicable state statute or common law provision.

N.     Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Generac demands a jury trial on all issues triable of right by jury raised in this Complaint.

Generac Power Systems, Inc.

By its Attorneys,

Date: October 5, 2011

s/ H. Michael Hartmann
H. Michael Hartmann
David M. Airan
Eley O. Thompson
John K. Winn
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza
180 North Stetson, Suite 4900
Chicago, IL 60601
(312) 616-5600