UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Generac Power Systems, Inc.,

       Plaintiff,

    vs.

Kohler Company,
Core Consulting, LLC, and
Greg Schmidt,

       Defendants.

Case No. 2:11-cv-935

---

**DEFENDANT KOHLER CO. AND DEFENDANT GREG SCHMIDT'S REPLY TO
GENERAC'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CLAIMS 2-5 OF THE COMPLAINT**

---

**INTRODUCTION**

This Court need only focus on Generac's Complaint and Generac's non-disclosure and

non-competition Agreement which Generac insists limits Schmidt's mobility: in doing so the

Court should conclude the Agreement is a *per se* unreasonable restraint of trade. Generac's

Complaint contains nothing more than inflammatory accusations that Schmidt misappropriated

unidentified information, engaged in unspecified breaches of the Agreement, and ignores well

settled Wisconsin law that demonstrates the Agreement is facially invalid. The Complaint and

the Agreement provide that Generac required Schmidt to sign a vague and incomprehensible

non-disclosure and non-competition Agreement; Generac was told upon Schmidt's departure in

July of 2010 that he was going to work at Kohler; Generac, by its own pleadings, admits it took

no actions to police its Agreement nor states how Schmidt or Kohler supposedly breached the

Agreement; and now, 16 months later after Schmidt's departure and many months past the

expiration of the non-competition provision, Generac seeks to enforce its Agreement and engage

in discovery of its long since departed former employee and his subsequent employer.  Generac's

Agreement is as unreasonable a restraint of trade as the belated claims 2 – 5 of its Complaint are

frivolous.

**ARGUMENT**

**I.     GENERAC'S CONTRACT CLAIMS SHOULD BE DISMISSED.**

**A.     Generac's claims based on its confidentiality provision must be dismissed.**

1.     Generac's confidentiality allegations do not satisfy *Twombly* and *Iqbal*.

Generac has offered only conclusory statements about the unidentified information that

its non-disclosure provision allegedly protects and any such information that was allegedly

leaked.  In fact, Generac's Complaint never identifies what information was taken; it always

refers to "confidential, proprietary and trade secret information" as a group (*See, e.g.*, Compl. ¶¶

9, 12-14, 17-18, 62-63, 66.)  Asserting that the non-disclosure provision protects trade secrets is

not enough.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 8 "requires

more than labels and conclusions.").  Generac's contract claims must be plausible to survive a

motion to dismiss, see *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at

570, but they cannot be plausible because Generac never specifically says what it thinks Schmidt

or Kohler took from it.  Generac has not met its minimal pleading duty because it cannot identify

(under penalty of Rule 11) any information that Schmidt or Kohler took from it, trade secret or

not.

2.     The Confidentiality Provision Is Facially Invalid.

As the Seventh Circuit held in *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d

801, 803 (7th Cir. 1993), a confidentiality agreement with an employee must have a reasonable

time limit in order to be valid.  Generac attempts to read a time limit into the non-disclosure

provision by importing a contract term that is not there.  Generac argues that "any confidentiality

- 2 -

obligations terminate at the time when the information 'becomes generally known to the public.'" (Generac's Brief in Opposition to Defendants' Motion to Dismiss Claims 2-5 of the Complaint ("Generac Resp. Br.") 12.) But the term "when" does not appear in Paragraph two of the Agreement. (Declaration of Greg Schmidt ("Schmidt Decl.") ¶ 2; Exhibit A.)

The effort fails anyway because no employee would ever be able to tell how long the confidentiality restriction would be in force. In *H&R Block Eastern Enterprises, Inc. v. Swenson*,[1] the Wisconsin Court of Appeals invalidated a clause that extended a restrictive covenant in the event of a breach, in part, because the duration of the covenant was indefinite and "contingent upon outcomes the employee cannot predict." *Id.* at ¶ 20, 745 N.W.2d at 427. Generac's non-disclosure provision is unenforceable for the same reason: Schmidt could never know or predict when Generac **or anyone else** would release Confidential Information to the public. *Cf. id.* at ¶ 19, 745 N.W.2d at 427 ("These questions, unanswered by the contract terms, mean that a former employee cannot tell from the terms of his or her contract how long the extension will be . . . ."). Generac claims its non-disclosure provision that runs until there's a public disclosure is a time limitation. But that's like saying if Generac wrote a non disclosure provision that ran until hell freezes over, that too would be a time limitation. Neither is a legitimate time limitation under Wisconsin law.

Next, Generac argues that its confidentiality agreement is not facially invalid because it covers "trade secrets." This is an argument that has been repeatedly rejected. As Judge Crabb held in *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 990-91 (W.D. Wis. Feb. 3, 2010), nondisclosure agreements that cover "trade secrets, but also cover other types of information" are unenforceable: "Even if a nondisclosure provision restricts disclosure of trade secret information, if it also restricts disclosure of information that is not a trade secret, §103.465

---

[1] 2008 WI App 3, 307 Wis. 2d 390, 745 N.W.2d 421, *rev. denied*, 2010 WI 5, 322 Wis. 2d 123, 779 N.W.2d 176.

028294-7002\10533180.8

requires a time limitation on the provision." *Id.* Because the nondisclosure terms in that case

had no time limit, the Court held them unenforceable, and noted that there was "no need for

additional development of the record to conclude as much." *Id.* at 991.

This Court recently addressed and rejected Generac's argument in *Share Corp. v. Momar,*
*Inc.*, 2010 U.S. Dist. LEXIS 22608 at *15 (E.D. Wis. Mar. 11, 2010). On March 11, 2010, this

Court, citing *Friemuth*, held that "the lack of any time limitation in a non-disclosure agreement

'renders a restrictive covenant unreasonable *per se*.'" *Id.* The Plaintiff amended its complaint

and raised the same argument, again; and this Court rejected the argument, again, on January 26,

2011. *Share Corp. v. Momar, Inc.*, 2011 U.S. Dist. LEXIS 10782 at **8-10 (E.D. Wis. Jan. 26,

2011). As it should in this case, the Court noted that "it is difficult to pin down exactly what

Share alleges its trade secrets to be." *Id.* at *22. This time Share Corp. specifically argued that

its agreement was not facially invalid because it covered "trade secrets." The Court rejected the

argument, holding that a non-disclosure agreement that covers some trade secret and some non-

trade secret information is *per se* invalid absent a reasonable time limitation. *Id.* at *23. The

Court reached the same result in *Metso Minerals Indus. v. FLSmidth-Excel LLC*, 733 F. Supp. 2d

980, 985 (E.D. Wis. May 7, 2010) ("the only way Metso's non-disclosure provisions could be

exempt from §103.465 would be if they only restricted disclosure of trade secret information").

The non-disclosure provision in this case does not cover **only** trade secrets. The

agreement, by its terms, protects "Confidential Information" (Schmidt Decl. ¶ 2; Exh. A.), which

it defines as "processes, know-how[,] technology, designs and certain supplier and customer

relationships, as well as marketing, and strategic business planning information not known

publicly or otherwise in the public domain" (*Id.*) This contractual definition is not identical to,

or narrower than, the statutory definition of a "trade secret" in Wis. Stat. §134.90(1)(c):

- 4 -

(c)     "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1.     The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2.     The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

The contractual defined term is not, for instance, limited to information which derives "independent economic value" from not being "readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."   It also is not limited to information concerning which Generac has undertaken "efforts to maintain its secrecy that are reasonable under the circumstances."  Because the Agreement is broader, on its face, than a statutory "trade secret," it is *per se* invalid.

Any doubt about the fact that Generac's confidentiality provision extends beyond statutory trade secrets is resolved by reading Generac's Complaint.   In Paragraph 30 of its Complaint, Generac explains that Schmidt's contract requires him to "maintain the confidentiality of Generac's confidential, proprietary and trade secret information…"  Though fatal, this is no accidental phrasing – Generac repeats the iteration in Paragraph 62.  Worse, in Paragraph 62 Generac explains that the Agreement bars Schmidt from disclosing (emphasis supplied) "confidential, proprietary **and/or** trade secret information that belongs to Generac." Generac has plead that its Agreement covers at least some things in addition to "trade secrets." If the Agreement meant what Generac scrambles to have it mean, Paragraphs 30 and 62 would have left out the terms "confidential" and "proprietary." If the Agreement covered "trade secrets," and only "trade secrets," as Generac now argues, the Complaint would contain

- 5 -

nonsensical surplusage.  Generac relies on *Henderson v. U.S. Bank, N.A.*, 615 F. Supp. 2d 804

(E.D. Wis. May 11, 2009), but *Henderson* does not undermine the established rule that a

covenant with no time limitation is unreasonable *per se*.  In *Henderson*, the court concluded that

because some of the materials allegedly disclosed might have been trade secrets, it could not

decide whether the non-disclosure provision was unreasonable before the record had been

developed.  *Id.* at 811-12.   But *Henderson* failed to account for the controlling Wisconsin

authority that if a non disclosure provision covers information that is not a trade secret, section

103.465 requires a time limitation on the provision.  *Friemuth*, 681 F.Supp.2d at 990-91.  Here,

as in *Friemuth* and *Momar*, the Court can read from the Complaint and the Agreement that the

Agreement covers something beyond *just* trade secrets.  Since the Generac non disclosure

provision has no time limitation it is a *per se* unreasonable restraint of trade.

Restrictive covenants are disfavored under Wisconsin law.  *Farm Credit Servs. of N.

Cent. Wis., ACA  v. Wysocki*, 2001 WI 51, ¶ 9, 243 Wis. 2d 305, 312, 627 N.W.2d 444, 447

(Wis. 2001); *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 214, 267 N.W.2d 242,

248 (Wis. 1978).  Consequently, contracts that operate to restrict trade or competition are suspect

and will be subject to close scrutiny and liberally construed in favor of employees and agents.

*Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 62, 319 Wis. 2d 274, 304, 767 N.W.2d 898, 913

(Wis. 2009); *Wausau Med. Ctr., S.C. v. Asplund*, 182 Wis. 2d 274, 281, 514 N.W.2d 34, 38 (Wis.

Ct. App. 1994).  If there is any doubt as to whether the Agreement covers only statutory trade

secrets, or also covers some information beyond trade secrets alone, that doubt must be resolved

against Generac.  Certainly, the Court should not engage in intellectual gymnastics to save

Generac from the most obvious reading of their Agreement, especially in the face of Generac's

own Complaint.  Generac has not filed a trade secret claim; and all of its other claims that

- 6 -

depend on misappropriation of information or breach of its confidentiality provision must be dismissed because the Agreement is facially invalid.

**B.      Paragraph Four of Generac's Agreement is *Per Se* Unreasonable.**

1.      Generac's Paragraph Four is an invalid janitor clause.

As discussed in Kohler's main brief, if Paragraph four of Generac's Agreement with Schmidt bars Schmidt from performing any services for Kohler, the Agreement is *per se* invalid. In response, Generac argues that its Paragraph four does not mean what it has said it means. Despite its protestations, Generac is still hung by its own pleading. Paragraph 63 of the Complaint alleges that, "Schmidt has breached a valid and enforceable contract with Generac by rendering services for Kohler prior to July 16, 2011 . . . ." (Compl. ¶ 63). Generac describes its own Agreement, over and over again, as barring Schmidt from rendering ***any*** services for Kohler. In Paragraph 30, Generac alleges that its Agreement requires Schmidt to "not compete with Generac for a limited period of time." In Paragraph 33, Generac alleges that Schmidt "had covenanted not to compete with or offer services against Generac." In Paragraph 34, Generac alleges that Schmidt "should not compete against Generac." In Paragraph 62, Generac alleges that Schmidt had an obligation "not to provide services against Generac for one year." In Paragraph 66, Generac alleges that Kohler interfered with Schmidt's contractual obligation "not to render services to Kohler in a line of business competitive with Generac for one year."

In addition to the Complaint, the Agreement and the Continuing Obligations letter show that Generac seeks to enforce a janitor clause. (See Schmidt Decl. ¶ 2; Exh. A) ("Employee agrees to not render services directly or indirectly for Employee's own account . . . .") and (Schmidt Decl. ¶ 3; Exhibit B) ("you may not render services for any person or entity in a line of business competitive with Generac for one year after the termination of your employment relationship with Generac[.]") It is too late for Generac to change horses. *Harrell v. U.S.*, 13

- 7 -

F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint."). To survive this Motion, Generac must convince the Court to ignore each and every one of its own descriptions of Schmidt's duties.

> 2.     <u>The other provisions of Generac's Agreement do not save the invalid activity restriction in the non-competition provision.</u>

Contrary to Generac's arguments, the "diversified company clause" in Paragraph four does not make Paragraph four other than a janitor clause. The diversified company clause states:

> It is understood, however, that Employee may accept employment
> with a diversified company, so long as my employment pertains
> solely to that part of its business, which is not in competition with
> any business of Generac Power Systems, Inc.

(Schmidt Decl. ¶ 2, Exh. A.) But that clause cannot be read to limit the janitor clause because it says nothing about the "services" an employee may or may not perform at a subsequent employer (*Id.*) In other words, Schmidt still could not be a janitor at a company competitive with Generac.

Generac ignores this problem, and argues at length that Paragraph ten limits Paragraph four's janitor clause to the "provision of the same or similar services[,]" thereby rendering it valid (Generac Resp. Br. 13-14.) But Paragraph ten reads as follows:

> Geographic and Service Limitations on Restrictive Covenants.
> Employee acknowledges that the restriction of competition is
> limited to provision of the same or similar services as those
> performed by Employee for the Corporation during Employee's
> employment with the Corporation

(Schmidt Decl. ¶ 2; Exh. A.) Paragraph ten does not state what "the restriction on competition" is, or how it might differ from "restrictive covenants" (*Id.*) The Agreement contains several restrictive covenants, including Paragraph two (non-disclosure), Paragraph four (non-compete),

- 8 -

028294-7002\10533180.8

Paragraph eight (no-hire clause), and Paragraph nine (non-solicitation clause) (*Id.*)  The use of the definite article "the" and the singular term "restriction" mean that the limitation in Paragraph ten applies to only one of those restrictive covenants, but that Paragraph offers no guidance as to which one.  Certainly, Paragraph ten does not reference Paragraph four; and the Court should resist the invitation to cast about for a way to bolt the Paragraphs together.

Another linguistic mystery in Paragraph ten is its use of the term "Corporation."  The term "Corporation" is not defined anywhere. (*See generally,* Schmidt Decl. ¶ 2; Exh. A.)  The Agreement defines Generac as the "Employer," not as the "Corporation."  The reader has no idea even who the "Corporation" is that Paragraph ten refers to.

Linguistic problems aside, Paragraph ten fails as a fix for Paragraph four for other reasons.  That Paragraph allows an employee to perform services for entities outside the United States—so long as the employee did not perform services for Generac outside the United States (Schmidt Decl. ¶ 2; Exh. A.)  However, a former employee would be restricted from competing against Generac in Mexico if the employee previously had performed services for Generac in Canada.  Or an employee who performed services for Generac in Canada would be prohibited from performing services for any competitor in China, Brazil, or anywhere else in the world.  Such geographic over breadth is *per se* unreasonable. See *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 607, 348 N.W.2d 505, 508 (Wis. 1984) (noting that employer conceded that nationwide restriction was unreasonable).  Accordingly, if Paragraph ten really is textually linked to Paragraph four, then, instead of fixing Paragraph four, it provides another infirmity and another reason to find paragraph four invalid.

Generac argues that its Complaint is wrong, and Paragraph 4 is modified by Paragraph ten, and that Schmidt is really only barred from performing "the same or similar services as those

028294-7002\10533180.8

performed by Employee for the Corporation," not from rendering any "services" for Kohler as Generac has alleged. As discussed above, Paragraph ten does not modify Paragraph four. If it did, however, then the Complaint's counts 2-5 should still be dismissed because Paragraph ten itself is invalid, and also because nowhere in the Complaint does Generac allege that Schmidt performed any particular services for Kohler, let alone services that are "the same or similar" to services he performed for an undefined "Corporation." For Generac's Complaint to make sense, Schmidt *must* have violated his Agreement simply by rendering *any* services for Kohler. If the Agreement requires Schmidt to provide any particular services to be in violation, then the Complaint fails under *Twombly* and *Iqbal,* because the Complaint does not allege that Schmidt did *anything* else besides "render services."

As noted above, restrictive covenants are disfavored under Wisconsin law and must be construed in favor of Schmidt and against Generac. *Wysocki*, 2001 WI 51, ¶ 9, 627 N.W.2d at 447; *Sandas*, 267 N.W.2d at 248. If there is any doubt as to what Paragraph four means, or how Paragraph ten interacts with Paragraph four, as a matter of law that doubt must be resolved against Generac. *See Star Direct* 2009 WI 76, ¶ 62, 767 N.W.2d at 913 ("it is true that we read restrictive covenants in favor of the employee."); *Asplund*, 514 N.W.2d at 38. We submit that Generac's explanation in the Complaint is accurate as to what its Agreement means – it bars *any* competition or services by Schmidt, and so it is overbroad and facially invalid. The Court should not strain to find some crabbed reading of the Agreement in order to render the Agreement enforceable. Such an effort runs directly against Wisconsin law and policy.

> 3.     The Schultz temporary restraining order is irrelevant.

The Schultz temporary restraining order proceeding in 2003 does not establish the validity of Generac's Agreement in this case. Generac argues that its Agreement is valid, and that for some reason a prior TRO proceeding involving a "Mr. Schultz" who signed an

- 10 -

unidentified and unplead non-competition or non-disclosure agreement establishes this. Generac, however, cannot attach the Schultz TRO to its brief because that TRO is not "central" to its claim. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); (*see also* Compl. ¶¶ 22-23.) (only Paragraphs mentioning Schultz TRO).

Moreover, a Wisconsin circuit court decision is not binding precedent. *Wis. Patients Comp. Fund v. Wis. Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 606, 547 N.W.2d 578, 580 n.3 (Wis. 1996). Neither is a circuit court's granting a motion for a temporary restraining order. *Cf. id.* (circuit court decision not binding precedent). A temporary restraining order cannot have claim preclusive effect. *See Allstate Ins. Co. v. Charneski*, 16 Wis. 2d 325, 329-30, 114 N.W.2d 489, 492 (Wis. 1962) (no *res judicata* when previous court did not decide the merits of the case); *Castle v. Madison*, 113 Wis. 346, 350, 89 N.W. 156, 158 (Wis. 1902) (no res judicata effect for "rulings made while the case is pending"). A temporary restraining order also cannot have issue preclusive effect. *See Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 49, 259 Wis. 2d 587, 621, 657 N.W.2d 411, 428 (Wis. 2003) (citing Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.")); *Laundry, Dry Cleaning, Dye House Workers Union, Local 3008 v. Laundry Workers Int'l Union*, 4 Wis.2d 542, 554, 91 N.W.2d 320, 327 (Wis. 1958) (citing Black's Law Dictionary, 4th Ed. 1247 (TRO "does no more than restrain the proceedings until" the court decides whether to issue a preliminary or permanent injunction)).

028294-7002\10533180.8

**II.    GENERAC'S NON-CONTRACT CLAIMS SHOULD BE DISMISSED.**

    **A.    The unjust enrichment allegations in Generac's brief are not included in its Complaint, and even if they were, Generac would plead itself out of court.**

Generac attempts to add to its unjust enrichment allegations by arguing that that claim is predicated on Kohler's raiding of Generac employees and its other "tortious activity," which includes (but is apparently not limited to), a pattern of tortious interference with Generac contracts (Generac Resp. Br. 20.)  But Generac's unjust enrichment claim comprises three Paragraphs of its Complaint:  Paragraph 70 incorporates all previous Paragraphs of the Complaint; Paragraph 71 alleges that Kohler and Core were "unjustly enriched by a sustained and widespread plan to raid Generac employees, information and know-how"; and Paragraph 72 states that as a result of Kohler and Core's "wrongful conduct," Generac was damaged (Compl. ¶¶ 70-72.)  Raiding employees is the only clear allegation in this section; there is no guidance as to what raiding information and know-how refers to (the un-alleged trade secrets misappropriation? Tortious interference with contract?).  Generac's incorporation of all of its previous allegations does not help it, either.  *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Therefore, the allegations in Generac's Complaint *are* limited to its allegations of employee raiding.

Regardless, the position Generac takes in its brief holds no water.  Kohler and Core's alleged tortious interference with Generac's contract is the basis of its unfair enrichment claim (Generac Resp. Br. 20.)  But Generac must choose contract claims (breach or tortious interference) or non-contract claims (unjust enrichment)—it cannot choose both.  *Roach Concrete, Inc. v. Veteran Pac., JV*, 787 F. Supp. 2d 851, 859 (E.D. Wis. Apr. 7, 2011) (holding that a plaintiff could not plead both contract and non-contract claims).  By combining its tortious

- 12 -

interference and unjust enrichment claims, Generac has cut off its unjust enrichment claim at the knees.

### B. Generac's unfair competition argument ignores Wisconsin law.

Generac identifies two key allegations to support its unfair competition claim: Kohler's alleged "history and pattern of targeting existing and former Generac employees" and tortious interference with contract (Generac Resp. Br. 18-19.) As noted in Kohler's principal brief, employee raiding is not illegal in Wisconsin. *Mutual Servs. Cas. Ins. v. Brass*, 2001 WI App 92, ¶ 15, 242 Wis. 2d 733, 743-44, 625 N.W.2d 648, 654-55 (Wis. Ct. App. 2001). As for Generac's tortious-interference-as-unfair-competition argument, it is based on a Pennsylvania federal court's construction of Pennsylvania law. *See ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 665, 688-89 (E.D. Pa. Mar. 28, 2003). A Pennsylvania district court's decision is not binding on this Court, and in this case, it is not persuasive either.

Generac apparently looks to Pennsylvania law to make its case because *ID Security Systems* construes the *Restatement (Third) of Competition*, which this Court has looked to for guidance in adjudicating common law unfair competition claims. *See Thermal Design, Inc. v. American Soc'y of Heating, Refrigerating and Air-Conditioning Eng'rs, Inc.*, 2008 U.S. Dist. LEXIS 34344, at *19-26 (E.D. Wis. Apr. 25, 2008). But the magistrate in *Thermal Design* considered the Restatement only because Wisconsin law offered no guidance as to whether competition was an essential element of unfair competition-misappropriation.[2] *Id.* at *21-22.

---

[2] Strangely, Generac asserts that Kohler and Schmidt's misappropriation argument "does not address any actual claim in the complaint" (Generac Resp. Br. 8.) Furthermore, Generac states that its unfair competition claim "exists independently of any alleged misappropriation" (*Id.* 9.) But the Wisconsin Supreme Court in *Mercury Record Prods., Inc. v. Economic Consultants, Inc.,* 64 Wis. 2d 163, 218 N.W.2d 705 (Wis. 1974), refers several times to the unfair competition cause of action as "misappropriation." 218 N.W.2d. at 709-11, 714-15. Moreover, Generac alleges in its unfair competition claim that Kohler "recruited and hired key Generac employees in knowing violation of the employee's contractual obligations and **misappropriated** strategic Generac intellectual property, designs, technology and marketing plans" (Compl. ¶ 56.) (emphasis added). If Generac read the applicable case law and its own Complaint, it would have realized what Kohler was attacking.

- 13 -

That question is irrelevant here because even if that element is essential, Generac has alleged it in its Complaint (Compl. ¶ 54) ("Generac and Kohler directly compete against each other . . . .") The crucial issue for this claim, as fully argued in Kohler's principal brief, is that Generac's Complaint does no more than parrot the elements of an unfair competition-misappropriation claim in Wisconsin. *Compare Mercury Record Prods., Inc. v. Economic Consultants, Inc.*, 64 Wis. 2d 163, 174, 218 N.W.2d 705, 709-10 (1974) (listing elements) *with* (Compl. ¶¶ 54-56.) Generac's bare-bones allegations of unfair competition cannot survive *Twombly* and *Iqbal*.

## CONCLUSION

Generac's Response makes clear that employment claims in its Complaint hinge on threadbare allegations of unidentified trade secrets and on its Agreement that would leave any employee guessing what it meant. Generac tries to revise its confusing Agreement and its inflammatory Complaint in its brief, but this attempt only proves that Generac came to court with no facts that support its allegations. Disposition of a *per se* unreasonable restraint of trade upon the pleadings is authorized and, as demonstrated, is frequently done by the courts. Accordingly, Claims 2-5 of Generac's Complaint should be dismissed.

Dated this 5th day of December, 2011.

028294-7002\10533180.8

**MICHAEL BEST & FRIEDRICH LLP**


By:  /s/ Scott C. Beightol
Scott C. Beightol, SBN 1006422
Eric H. Rumbaugh, SBN 1015164
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI  53202-4108
Telephone:  414-271-6560
Fax:  414-277-0656
E-mail: scbeightol@michaelbest.com
E-mail: ehrumbaugh@michaelbest.com
Attorneys for Defendants
Kohler Co. and
Greg Schmidt

028294-7002\10533180.8